## GRIFFIN *v.* GRIFFIN.

1. MARRIAGE—VOID WHERE FEMALE UNDER AGE OF CONSENT.

Under 3 Comp. Laws 1915, § 11362, a female under 16 years of age is incapable of contracting marriage, and the marriage of a 14-year old girl was therefore void without any judicial decree or other legal process under 3 Comp. Laws 1915, § 11393.

On validity of marriage of persons of non-age, see notes in 22 L. R. A. (N. S.) 1202; L. R. A. 1916A, 740.

As to general characteristics and validity of common-law marriage, see note in L. R. A. 1915E, 8.

2. SAME—COMMON-LAW MARRIAGE.

Where a man and woman agreed to live together as
husband and wife and get married at some future time,
but there was no present taking of each other for husband
and wife, there was no common-law marriage.

3. HUSBAND AND WIFE—DOWER RIGHTS—FRAUD.

Where defendant, five months before his marriage to
plaintiff, conveyed a house and lot to his sister, it cannot
be said that said deed was executed in fraud of plaintiff's
dower rights, in the absence of any evidence that a mar-
riage engagement was pending or that the parties con-
templated marriage at that time.

4. DIVORCE—ALIMONY.

Where in a suit by a wife for a divorce it appears that
the husband has a substantial interest in the proceeds
from the sale of a house and lot deeded without considera-
tion to his sister before his marriage, the decree in favor
of the wife should require defendant, out of said fund,
to reimburse plaintiff for moneys advanced to him by her
and also pay a reasonable amount for alimony, in ad-
dition to attorney's fees.

Appeal from Wayne; Brown (William B.), J., pre-
siding.    Submitted October 24, 1923.    (Docket No.
75.)    Decided December 19, 1923.

Bill by Della Griffin against Charles S. Griffin and
others to establish an interest in certain real estate,
and for a divorce from defendant Griffin.    From a de-
cree for plaintiff, defendants appeal.    Modified and
affirmed.

*James R. Thomas,* for plaintiff.

*Louis H. Wolfe* (*G. Leslie Field,* of counsel), for
defendants.

MCDONALD, J.    The plaintiff filed a bill for divorce
against the defendant on July 1, 1920.    There was no
appearance on his part.    She was given a decree and
an allowance of $600 for permanent alimony.    On
October 8, 1921, on petition of the defendant the decree

was set aside by the circuit judge.    In her bill plaintiff alleged that the defendant was then the owner of certain property on Beaubien street in the city of Detroit.    Subsequent to the divorce proceedings she learned that he had deeded this property to his sister, Ida Postles, on the 4th day of June, 1918.    On June 30, 1922, she filed a bill asking to have this deed set aside as having been executed in fraud of her dower rights.    By agreement of counsel this case and the divorce case were consolidated and heard together.

The plaintiff's evidence tends to show that on the 3d day of September, 1894, when she was 14 years old, she left her parents' home at Windsor, Ontario, went to Detroit with a man named Montgomery Bell and was there married to him; that immediately after the ceremony she returned to her home and never lived with Bell after the marriage; that when she was 21 years of age she married one Samuel Franklin, with whom she lived until his death two years later; that in 1912 she entered into a common-law marriage with the defendant, Charles Griffin, with whom she lived as his wife until December 31, 1918, when a formal marriage ceremony was solemnized between them; that the reason for this ceremony was the fact that she was being embarrassed by questions from her parents as to her marriage, and that she wanted to show them some evidence of it; that during the time of her cohabitation with defendant he did not work regularly because of sickness, and that it became necessary for her to support him; that after their marriage in December, his treatment of her was so cruel that further marital relations with him became unbearable and she was compelled to leave his home; that when the deed was given to his sister the parties were living in the house on Beaubien street; that plaintiff was keeping boarders and used the money thus obtained in making extensive repairs on the property

and in supporting the family; that the deed was without any consideration whatever, and was secretly made in order to defraud her of her dower rights in the property.

On his part the defendant contends that no legal marriage exists between him and the plaintiff; that no common-law marriage was ever entered into by them, and that on the 31st day of December, 1918, when the formal ceremony was performed, the plaintiff was incapable of contracting a marriage because of her previous marriage to Montgomery Bell; that the deed of the Beaubien property to his sister was for a good and valuable consideration, and was not given because of any anticipated marriage to the plaintiff.

The circuit judge before whom the cause was heard found that the plaintiff's marriage with Montgomery Bell was null and void; that in 1912 she entered into a common-law marriage with the defendant; that he had been guilty of the various acts of cruelty set up in the bill for divorce; that the deed given by the defendant to his sister was in fraud of plaintiff's dower rights, and as to her should be set aside, and that plaintiff was entitled to permanent alimony amounting to one-third of the proceeds from the sale of the property.    From the decree entered the defendant has appealed.

The following questions are involved:

(1) The validity of the marriage between plaintiff and Montgomery Bell.

(2) Whether a common-law marriage was entered into prior to the execution of the deed to Ida Postles, on the 4th day of June, 1918.

(3) If no common-law marriage existed at the time the deed was executed, was it invalid as to plaintiff's dower rights in view of the approaching marriage which was solemnized on December 31, 1918.

(4) Whether plaintiff was entitled to a decree for divorce.

(5) The reasonableness of the amount of alimony to her.

At the time of her marriage with Montgomery Bell, the plaintiff was but 14 years of age, and therefore incapable of contracting a marriage (3 Comp. Laws 1915, § 11362).

As to her relations with Bell after she attained a marriageable age the evidence is in conflict. The circuit judge found that the parties did not live or cohabit together after that time. We think he reached a correct conclusion. The marriage was therefore void without any judicial decree or other legal process (3 Comp. Laws 1915, § 11393).

Was there a common-law marriage between the plaintiff and Charles S. Griffin? As has been said in numerous decisions of this court, the test of a common-law marriage is, Did they presently agree to take each other for husband and wife and thereafter live together in that relation? Measured by this test the evidence does not sustain the claim that a common-law marriage was entered into. The defendant denies that they lived together at all, except for a few days preceding their formal marriage in December, 1918. We think, however, it is clearly established by independent evidence that they lived and cohabited together as husband and wife for several years, and that by their acts and conduct they intended to give their friends and relatives to understand that they were man and wife though both knew that no such relation existed. The testimony of the plaintiff herself clearly shows that their relation was but an illicit cohabitation with the intention of a marriage some time in the future. She testifies:

"He sent for me to come to Chicago; he was over there, and he wanted me to come over to visit with him in Chicago. After I got on the visit I lived with him.

"*Q.* Had you lived with him before that?

"*A.* No.   *   *   *

"*Q.* The question was, when you got to Chicago, and consented to live with him, what did he say to you and what did you say to him upon that subject?

"*A.* We had not had any conversation about me going to live with him until I went to Chicago on a visit.   He wanted to know if I would not stay in Chicago and live with him in Chicago.

"*Q.* What did you say?

"*A.* I said I would stay for awhile.

"*Q.* That is all that was said and you did stay with him?

"*A.* I did stay; that is all that was said at that time."

When asked how she came to take his name she said:

"I agreed to live with him as his wife.

"*Q.* How did you come to do that?

"*A.* When we went to get a room, I had to be his wife to be able to get a room together."

How long they lived together before there was any talk of marriage, the record does not show.   She says:

"Later I told him I thought it was not right for us to live together and not be married.   He said later we would get married.

"*Q.* It was with the understanding you would live with him a short time and get married?

"*A.* As soon as he expected to get some money which he said he would get—he said he would get money and get married."

This was in 1912, and they lived together with that understanding until December 31, 1918, at which time they were married by formal ceremony.   It is clear from this testimony that the only understanding they had was that they should live together as husband and wife and get married at some future time.   There was no taking of each other for husband and wife, and neither of them understood that there was a marriage. There was no agreement that they should become hus-

band and wife without a formal marriage. Such an arrangement does not constitute a common-law marriage. 26 Cyc. p. 839; *Judson* v. *Judson,* 147 Mich. 518; *Lockwood* v. *Lockwood,* 220 Mich. 124.

It is next urged by counsel for the plaintiff that even though no common-law marriage existed at the time the deed of the Beaubien street property was given to Ida Postles, in view of their approaching marriage it was secretly executed in fraud of plaintiff's dower rights. The deed was given June 4, 1918, and was recorded on July 2d; the marriage took place on the 31st day of December, 1918. There is no evidence that any marriage engagement was pending when the deed was executed, or that the parties contemplated a marriage at that time. The record furnishes no reason for the belief that the ownership of this property by the defendant influenced the engagement and marriage which took place more than five months later. This is not a case where a conveyance is made secretly on the eve of a marriage or while an engagement is pending. She had at that time no rights or prospective rights in the property, and as to her the defendant might convey it as he pleased, either as a gift or for a consideration. See *Connelly* v. *Ford,* 202 Mich. 558, and cases cited.

But while the deed may not be set aside as given in fraud of the plaintiff's dower rights, we think that the defendant now has a very substantial interest in the proceeds from the sale of the property, out of which, in the decree for divorce, he should be required to pay the moneys advanced by the plaintiff, and a reasonable allowance for permanent alimony. The property has been condemned for use of the board of education of the city of Detroit, and there is now in the hands of the board $6,750 awaiting the outcome of this litigation. As to the proofs on many material facts, the record is not as definite as it might be, but from our examination of it we are convinced that a large part,

if not all of this money, belongs to the defendant. He testifies that if the property had not been condemned, his sister, who was the grantee in the deed, was to have it after his death. He says that the deed was given to her in consideration that she should support his son. The boy at this time was about 15 years old. He needed no greater care than the average boy of that age. The defendant was working, earning good wages and putting aside money. He was well able to support himself and son without using the real estate for that purpose. It is highly improbable that a man situated as the defendant was should deed property valued at $6,750 for no other consideration than the support of a boy who was nearing the time when he could look after himself. Further, it is in evidence that after the deed was made he treated the property as his own, paid the taxes, and made extensive repairs with the help of the plaintiff. It does not appear that Ida Postles paid anything for the property, or that she expended any money in maintaining it. If she did, that is a matter to be adjusted by her and Mr. Griffin. The circuit judge found that the plaintiff had a one-third interest in the $6,750, to be paid by the board of education, and that she was entitled to a decree for divorce. Without entering upon any useless discussion of the evidence relative to the domestic troubles of the parties, we express the conviction that the court arrived at a correct conclusion except as to the interest which he says the plaintiff has in the proceeds of the sale of the property. She is not entitled to any financial benefits because of services performed by her while living in unlawful cohabitation with the defendant. But, after the marriage in December, 1918, she kept roomers and contributed to the maintenance of the family and of the property. She also loaned the defendant money to the extent of $600. In the circumstances, we think, the decree for divorce should require the de-

fendant to pay her $1,200 out of the fund now held by the board of education, in addition to the attorney fees specified in the original decree.

The decree will be modified in accordance with this opinion. Neither party will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.