HAMITER, Justice.
• As coguardians of Flora M. Alward (Rohnert), a mentally incompetent person residing in Wayne County, Michigan, plaintiffs, who are also residents of such County and State, instituted these three petitory actions (consolidated in the district court and here) in which they assert on behalf of their ward, ownership to approximately 1108 acres of land in Rich-land Parish, together with the oil produced therefrom. They impleaded as defendants all parties in the actual possession of the property and others claiming oil and gas rights and leases affecting it.
*806 For a cause of action plaintiffs alleged that their ward, Flora M. Alward Rohnert, was the wife of Frederick Rohnert from prior to January 27, 1893 until'the latter’s death on October 26, 1936, the marriage having been of the common-law type, without license or ceremony, which was valid and legal under the laws of Michigan (the domicile of those persons) and recognized by the State of Louisiana insofar as it concerns property of the spouses in this state; that the named husband, during such marriage, acquired the above-mentioned land in Richland Parish under deeds dated January 27, 1893 and April 4, 1893; that he never disposed of it and died intestate without leaving ascendants or descendants; and that on the husband’s death the said wife, as his surviving widow in community and his sole and only heir at law, became and was the owner of all of such property which had belonged to the community of acquets and gains that existed between them.
In the alternative plaintiffs pleaded that their ward is entitled to one-fourth of the property (the marital fourth) as a surviving widow in necessitous circumstances.
To the actions the defendants tendered numerous exceptions, all of which were overruled. Also, they filed pleas of prescription of ten years acquirendi causa. The court referred these pleas to the merits.
Answering, the defendants reurged their exceptions and pleas, and they denied that a marriage ever existed between plaintiffs’ ward and Frederick Rohnert. Further, they averred that Frederick Rohnert had disposed of the property in contest by a recorded deed translative of title, from which their respective rights flowed, and that his alleged widow likewise had disposed of any interest which she might have had therein.
After a trial of the merits the district court rendered judgments in the three cases rejecting the demands of plaintiffs and dismissing their suits. These appeals (consolidated and docketed in this court under one number) followed.
Subsequent to the filing of the transcript here plaintiffs’ ward died leaving certain heirs, all . of whom are nonresidents of this state. A curator for these absent heirs has been appointed and, through proper motion and order, he is now a party plaintiff and appellant herein.
In rendering the judgments appealed from the district judge assigned no written reasons. The briefs filed in this court, however, disclose his conclusion to have been that appellants failed to establish the existence of the alleged common-law marriage — concededly a prerequisite for any recovery herein. Thus, appellees’ counsel say that the judge “found no evidence sufficient to prove a common-law marriage and correctly concluded that in the absence of such a marriage plaintiffs had no claim.” And appellants’ counsel state: “Plaintiffs face the burden of showing that the judgment of the district court is manifestly er *808 roneous in holding that a common-law marriage was not established by a preponderance of the evidence.”
With respect to this paramount issue of marriage all parties agree that the following observations, contained in the brief of appellees’ counsel, are correct:
“A marriage such as is alleged upon in these proceedings is not recognized by our laws, but, out of comity, the Courts of this State will give effect to any marriage valid under the laws of the state where the parties reside. Succession of Marinoni, 177 La. 592, 148 So. 888. Michigan recognizes the common-law marriage, and since Flora Alward and Frederick Rohnert were both residents of that State, we must look to the laws thereof in order to determine if the marriage existed.”
As to the proof required hy the laws of Michigan for establishing a non-ceremonial marriage there can be no doubt. According to the settled jurisprudence of the Supreme Court of that state the existence of such a marriage can not be concluded unless it clearly appears from the evidence (1) that the parties presently agreed to take each other as husband and wife and (2) that they lived together and cohabited in conformity with their agreement and in the usual manner of married people. The latest case on the subject in which the Michigan court recognized the mentioned two requisites seems to be Hannigan v. Hannigan, 328 Mich. 378, 43 N.W.2d 895 (decided September 11, 1950), and in giving that recognition it cited with approval numerous earlier decisions, including Griffin v. Griffin, 1923, 225 Mich. 253, 196 N.W. 384; In re Meredith’s Estate, 1937, 279 Mich. 298, 272 N.W. 683, and People v. Spencer, 1917, 199 Mich. 395, 165 N.W. 921.
In the Griffin case the following was said [225 Mich. 253, 196 N.W. 385]:
“As has been said in numerous decisions of this court, the test of a common-law marriage is: Did they presently agree to take each other for husband and wife, and thereafter live together in that relation ? * ■ * *”
In the Meredith case we find this statement [279 Mich. 298, 272 N.W. 685]:
“ * * * However, to- establish a common-law marriage, it is not alone sufficient that the parties cohabited and were known as husband and wife, but it is essential that it also be shown that there was a present agreement between the parties to take each other as husband and wife. * * * ”
In explaining the necessary cohabitation as husband and wife the court observed in the Spencer case as follows [199 Mich. 395, 165 N.W. 923.]:
“ * * * In this state a marriage is not proven by evidence only that the parties, inter se, agreed to take each other for husband and wife. To' establish a nonceremonial marriage, there must be proof, not only of the agree *810 ment, but of the setting up of the relation of husband and wife by cohabitation. The parties must act in conformity with such an agreement and live together and cohabit as husband and wife — live together in that relation. * * *
“The common-law marriage, so-called (or miscalled), is recognized in the interest of the family and of legitimacy of offspring. If the family relation is established and maintained in •consequence of, and pursuant to, the mutual agreement to marry, the law recognizes the union; the family. Cohabitation in this behalf means ■dwelling together; living in the usual manner of married people. It is a manifestation that the parties have •consented between themselves to contract the marriage relation, a holding forth to- the world by daily life, conduct, demeanor, habit, that the man and woman who live together have agreed to marriage and to stand to each other in the mutual relation of husband and wife. * * *”
We do- not find that the law applied in Re Yokom’s Estate, 1949, 325 Mich. 472, 38 N.W.2d 909 (relied on here by appellants’ counsel) varies in any respect from that quoted above. Therein, the court merely approved a verdict of the jury, which found the existence of a common-law marriage, on the theory that it was in keeping with the law of Michigan and not against the great weight of the evidence.
Also relied on here by appellants’ counsel are numerous cases in the Michigan jurisprudence which seem to hold that the required present agreement to marry may be implied, the implication being based upon statements and conduct of the parties and their general repute in the community where they lived. But those cases, unlike the present matter, involved factual situations wherein the parties had originally contracted and established definite marriages (either ceremonial or common-law) which were void because of certain legal impediments, and they continued to live together after the removal of the impediments.
We now consider the evidence in the instant case, contained in a voluminous record of some 2200 pages, with the view of determining whether or not there existed a common-law marriage between the persons in question. In making the determination we are to apply the above announced test: Did they presently agree to take each other as husband and wife and thereafter live together in that relation?
From the record it appears that the alleged husband, Frederick Rohnert, owned and operated a drug store known as Rohnert’s Pharmacy, at No. 1301 East Jefferson Avenue, Detroit, Michigan, from prior to 1889 until his death on October 26, 1936. In 1893 he acquired the Louisiana land presently in contest. From about 1894 until 1916 Flora Alward, his alleged common-law wife, was employed by Parke, *812 Davis & Company, a wholesale drug firm of Detroit, and ’during that period she often visited Rohnert’s Pharmacy. Born in. Canada, and a naturalized American citizen, she had lived in Detroit at least since 1891, at which time she was approximately 14 years of age. The exact date of her becoming acquainted with Rohnert, who was much older than she, is not shown.
During the six years following her departure from Parke, Davis & Company in 1916, and possibly while employed elsewhere, Flora Alward made further frequent visitations to- the drug store. In the words of a defense witness who was then clerking there: “Well, to be frank with you, all she ever did was to hang around to talk and look for companionship'. She would come in the store when I was there, say about an hour before closing time and just hang around and hang around and hang around and many a time I have had to use ammonia to get rid of her.”
From about 1923 on until 1932, after the mentioned clerk had left, she was observed continually in the pharmacy serving customers and performing routine work while Rohnert, a pharmacist, filled prescriptions. Some of the then customers and neighbors, testifying in behalf of plaintiffs, said that they addressed her as Mrs. Rohnert,' in Rohnert’s presence and without his correcting them, believing the two to be married. This belief, such witnesses stated, was based on certain observations. In the first place Flora appeared to take an unusual interest in the-business and seemingly worked much harder than an ordinary clerk would. Secondly, she and Rohnertwere often seen together late,at night and. early in the morning, following the store’s, closing usually at 10:00 P.M. o’clock, in a. small room located at the rear of the premises, the dimensions of which were approximately ten by twelve feet. In this room they cooked and enjoyed meals, and. frequently she bathed his swollen legs.
In parts of 1932 and 1933 Flora was in a mental institution, pursuant to a legal commitment, and while there Rohnert sent to her occasionally, by her sister, small amounts of money, and some candy bars and magazines. This sister, who is also a plaintiff herein, then learned from Flora for the first time of the alleged marriage and noticed that she was wearing a wedding ring.
Although plaintiffs averred in their petitions. that the common-law marriage between Flora and Rohnert took place prior to January 27, 1893, there is no evidence-whatever in the record to support theaverment. Having any tendency to indicate the existence of the contended for relationship are only the above described, incidents occurring subsequent to 1923.
The record reveals many circumstances,, on the other hand, militating against plaintiff’s contention that a marriage was confected. Throughout the period of her employment at Parke, Davis & Company (1894 to 1916) Flora Alward received her *814 salary vouchers made payable in that name and she had the reputation of being a single woman. In her sworn petition for naturalization, filed August 6,1924, she alleged that she was unmarried; and affixed to that document was the signature “Florence May Alward”. When Flora was committed to the mental institution in 1932, the petition therefor, filed by her sister, contained the allegation “that said alleged insane person is of the age of 55 years, and is unmarried.” In 1935, after her release from the institution, Flora applied to the Department of Public Welfare of Detroit for financial assistance, and, in the application prepared in her own handwriting, she stated that she was a single woman and listed five brothers and sisters as being all of her living relatives.
In 1938, in cause No. 235,176 on the docket of the Probate Court for Wayne County, Michigan, entitled “In the Matter of the Estate of Frederick Rohnert, Deceased”, there was filed a petition reciting:
“Your petitioner, Flora M. Alward, also known as Flora M. Rohnert, respectfully represents that the above estate is indebted to her for services, rendered and performed by her to Frederick Rohnert, deceased, during his lifetime in various capacities and at his request for the following periods, to wit: For the years of 1930 to 1936 inclusive — $9,000.00.
“Petitioner represents that the said amount has not been paid to your petitioner nor any part thereof. Your petitioner therefore prays that she be awarded said amount computed, plus five (5%) per cent interest to the time of the hearing of said claim.
“Flora M. Rohnert “Also known as Flora M. Alward “Petitioner”
Notwithstanding that the decedent’s property had been inventoried and appraised at $131,534.56 Flora Alward claimed from the estate only $9,000, and shortly thereafter she settled and released all of her rights and claims in consideration of the payment to her of the small sum -of $1,900.
Adverting to the period from and after 1923 while Flora was assisting Rohnert in the pharmacy, plaintiffs insist that the parties then were residing together as husband and wife, using the small rear room of the premises as living quarters. But according to the record, that room was unsuitable for such purpose. It was without a bath; and the contents thereof consisted merely of a narrow, single couch, a table, two dining chairs, a hot plate, a rocker, a rug and a lamp. Also, no one was aware of the couple’s having spent an entire ■ night there. The evidence is conclusive, in fact, that they at all times maintained' separate places of abode, away from the drug' store, and neither was ever seen at the quarters of the other. Again, from March, 1927 until October, 1932, „ while living alone in an apartment at Blodgett Terrace in Detroit,' plaintiffs’ ward was registered on the books *816 of the owner of the building, and she received electricity bills, under the name of Miss Flora M. Alward. And during that period, as well as previously and subsequently, Rohnert resided elsewhere with his sister. Moreover, the couple was never observed together at any private or public functions.
Although some of plaintiffs’ witnesses testified, as before shown, that they addressed Flora as Mrs. Rohnert, other witnesses, appearing on behalf of defendants, always considered that both she and Rohnert were unmarried. Among those of the latter group were several long-time intimate acquaintances and friends of Rohnert who knew him only as a confirmed bachelor. Particularly impressive is the testimony of a physician who maintained his office directly across the street from the pharmacy and saw and talked with Flora and Rohnert almost daily after 1923. He had no knowledge of their holding themselves out as married people, and he looked upon their relationship as only that of employer and employee.
Of much significance also are recitations found in numerous conveyance acts to which Frederick Rohnert was a party. Between 1892 and 1936 he executed 34 deeds conveying property in Wayne County, Michigan, in each of which he declared that he was single or unmarried. „ Affecting property in Richland Parish, Louisiana, and signed by Rohnert between. 1893 and 1933, were 33 deeds in which he is described as a single man. In no instrument executed by Rohnert and brought to our attention was he declared to be a married man.
Considered as a whole, and tested in accordance with the legal principles announced in the above discussed jurisprudence, the evidence adduced in this cause does not preponderate^ show the existence of a nonceremonial marriage between Flora Alward and Frederick Rohnert valid under the laws of the State of Michigan, of which they were residents. There is no proof whatever of a present agreement that they would be husband and wife, this being one of the two requisites for establishing the relationship. Neither can it be correctly-said that the other requirement regarding cohabitation in the usual manner of married people has been met. True, for a number of' years at the drug store after 1923 the parties worked together, cooked and ate some-meals, and enjoyed each other’s company after closing hours; and Flora, without objection from Rohnert, was addressed by-several persons as Mrs. Rohnert. These: incidents may suggest, although they do not. disclose necessarily, a marriage relationship, But it is certain that the existence of such, a relationship cannot be concluded when the-other acts of the parties are also considered, both of omission and comission, particularly-their dwelling separate and apart continuously in different places of abode, failing-to ever appear together at any public or private function, and referring to them *818 selves repeatedly in written documents as being unmarried.
A recovery by plaintiffs herein being concededly dependent upon the existence of a marriage between Flora Alward and Rohnert, and this relationship not having been established, it follows that the district judge, on the evidence adduced, properly dismissed the suits.
Plaintiffs, in the alternative, have moved in writing here that the cases be remanded to the district court for the purpose of permitting all parties litigant to introduce additional evidence relating to the alleged marriage, and they have attached to the motions numerous affidavits and some letters of suggested witnesses in which the substance of the proposed new testimony is recited. From the record we find that plaintiffs’ counsel were engaged in this litigation for more than two years in advance of the trial, and, this being true, there appears to be no good reason why the new evidence now sought to be introduced could not have been obtained during that period. But conceding arguendo that counsel used all due diligence in attempting to locate it, the greater part of the asserted newly discovered evidence relates to the above described activities of Flora Alward and Rohnert during their acquaintance and association at the drug store; it, in the main, is purely cumulative; and, if introduced, it could not change the result herein reached. The alternative motions to remand, therefore, are overruled.
For the reasons assigned the judgments appealed from are affirmed.
FOURNET, C. J., absent.